IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:26-cv-00940-CNS

ANH VO TRAN,

     Petitioner,

v.

JUAN BALTAZAR, in his official capacity as Warden of the Aurora Contract Detention Facility owned and operated by GEO Group, Inc.;
GEORGE VALDEZ, in his official capacity as Field Office Director, Denver, U.S. Immigration & Customs Enforcement;
KRISTI NOEM, in her official capacity as Secretary, U.S. Department of Homeland Security;
TODD LYONS, in his official capacity as Acting Director of Immigration & Customs Enforcement (ICE); and
PAM BONDI, in his official capacity as Attorney General, U.S. Department of Justice,

     Defendants.

---

**ORDER**

---

Before the Court is Petitioner Anh Vo Tran's Verified Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, ECF No. 1, and Petitioner-Plaintiff's Motion for Temporary Restraining Order and/or Preliminary Injunction, ECF No. 2. The Court presumes familiarity with the parties' briefing. *See* ECF Nos. 1, 2, 16. As the briefing demonstrates that Petitioner's challenge is fundamentally legal in nature, the Court declines to hold a hearing, *see* 28 U.S.C. § 2243. For the reasons set forth below, the Court GRANTS the Petition and ORDERS Respondents to immediately release Petitioner from immigration detention.

1

## I.    BACKGROUND

Petitioner is a native and citizen of Vietnam, ECF No. 16-1 (Todd Decl.) ¶ 4, and has been in the United States for over 30 years since he arrived as a refugee in 1992, *id.* ¶ 5. Petitioner was admitted to the United States as part of the 1992 Humanitarian Operation and subsequently became a lawful permanent resident. ECF No. 1 ¶ 24. On April 5, 1995, Petitioner was convicted of Criminal Trespass and sentenced to 12 months of probation. ECF No. 16-1 ¶ 6. On November 4, 2002, Petitioner was charged with being removable from the United States pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii). *Id.* ¶ 7. On July 18, 2003, Petitioner was taken into custody by Immigration and Customs Enforcement (ICE) pending the resolution of his removal proceedings. *Id.* ¶ 8. On August 12, 2003, an immigration judge (IJ) sustained the charges of removal and ordered Petitioner removed from the United States to Vietnam. *Id.* ¶ 9.

Petitioner initially remained in ICE's custody while the government attempted to secure his travel documentation. On or about December 8, 2003, ICE submitted a travel document request to the Vietnamese government on Petitioner's behalf. *Id.* ¶ 10. According to the declaration of Jared Todd, the Deportation Officer assigned to Petitioner's case, the outcome of that request is unknown.[1] *Id.* ICE then subsequently released Petitioner from custody on an order of supervision. *Id.* ¶ 11. Although the parties' declarations submitted in connection with the briefing contain conflicting information on when Petitioner was actually released from custody,[2] they agree that, at a minimum,

---

[1] Specifically, Mr. Todd's declaration states "[o]n or about December 8, 2003, ICE submitted a travel document request to the government of Vietnam on behalf of Petitioner. I am unaware of the disposition of this request." ECF No. 16-1 ¶ 10. Although not certain, the Court infers from this that ICE's request to the Vietnamese government went unanswered.

[2] Mr. Todd's declaration, submitted in connection with Respondents' brief, states that Petitioner was released from ICE's custody from July 18, 2003 until April 6, 2004, when Petitioner was released on an

Plaintiff spent at least three months in immigration detention following the entry of his final order of removal, from August through November 2003, before he was released with conditions. *Id.* ¶¶ 8, 11; ECF No. 2-1 (Tran Decl.) ¶ 2. Approximately 10 years later, on July 8, 2013, while Petitioner was released, the government submitted another travel document request to the Vietnamese government on Petitioner's behalf. *Id.* ¶ 12. This time, the Vietnamese government responded and declined to issue travel documents for Petitioner. *Id.* ¶ 13.

On November 4 or 5, 2025, Petitioner was again taken into custody by ICE during his annual check-in with immigration authorities pursuant to the conditions of his order of supervision. *Id.* ¶ 14; ECF No. 2-1 ¶ 4. Petitioner has remained in ICE custody since then and is currently detained at the ICE contract detention facility in Aurora, Colorado (Denver CDF) pending his removal from the United States. *Id.* ¶¶ 1,19. Although ICE provided Petitioner with notice that his custodial status would be reviewed on or about February 2, 2026, *see* ECF No. 2-3 (ICE Notice to Alien to File Custody Review) at 1, ECF No. 16-1 ¶ 17, Petitioner states that he was not actually given the opportunity to do so as "ICE never came," ECF No. 2-1 ¶ 9.

According to Respondents, the government "has been working to obtain a travel document for Vietnam on Petitioner's behalf." ECF No. 16-1 ¶ 16. Although Respondents state that "ICE has successfully removed Vietnamese citizens with final orders of removal from the United States to Vietnam" "in recent months," *id.* ¶ 18, Respondents provide no

---

order of supervision. *Id.* ¶¶ 8, 11. Thus, by Respondents' telling, Petitioner spent approximately nine months in immigration detention between 2003 and 2004, with over seven of those months occurring after Petitioner received his final order of removal from the IJ. In Petitioner's declaration, however, he states that ICE kept him in custody "for about three months after the removal order in August [2003] and then released me on an Order of Supervision." ECF No. 2-1 (Tran Decl.) ¶ 2.

additional information regarding the status of their request with respect to Petitioner's removal, or the likelihood that Petitioner will be removed in the reasonably near future. Petitioner does not have a passport, ECF No. 2-1 ¶ 12, and he does not have citizenship or a claim to status in any country other than Vietnam. *Id.* ¶ 5.

Petitioner states that, in the 22 years since he was released following the entry of his final order of removal, he was never arrested, never had any issues, and always appeared for his supervision meetings with ICE when requested. *Id.* ¶ 3. Respondents do not appear to dispute these facts. Petitioner states that, if released from custody, he will return home to Kansas with his wife and daughter, both of whom are U.S. citizens. *Id.* ¶ 10. Petitioner states that his wife is currently pregnant with their second child. *Id.*

## II.    ANALYSIS

Pursuant to Section 2241 of Title 28, the Court is authorized to consider Petitioner's habeas petition and may issue a writ of habeas corpus if it determines that a person is "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c)(3), including if they are held in "immigration detention," *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001)). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

### A. Detention of Noncitizens With a Final Order of Removal

Under the relevant statutory framework, after a noncitizen is ordered removed from the United States, their removal "shall" occur "within a period of 90 days" referred to as the "removal period." 8 U.S.C. § 1231(a)(1)(A); *Morales-Fernandez v. Immigr. &*

*Naturalization Serv.*, 418 F.3d 1116, 1123 (10th Cir. 2005). Detention is mandatory during that time, 8 U.S.C. § 1231(a)(2)(A), but once the 90-day removal period expires, a noncitizen "*may*" continue to be detained, *id.* § 1231(a)(6) (emphasis added). As the Supreme Court recognized in *Zadvydas v. Davis*, although such language "suggests discretion," that discretion is "not necessarily [] unlimited," *Zadvydas*, 533 U.S. at 697, as there would be a "serious constitutional problem" if the government could detain noncitizens "indefinite[ly]," *id.* at 692.

Thus, the *Zadvydas* Court determined that when "read in light of the Constitution's demands," Section 1231(a)(6) "limits [a noncitizen's] post-removal-period detention to a period *reasonably necessary to bring about that [noncitizen's] removal* from the United States." *Id.* at 689 (emphasis added). It concluded that a six-month detention period is presumptively reasonable to achieve that goal. *Id.* at 701. However, the presumptive six-month period does not mean that every detained noncitizen must be released after six months; rather, a noncitizen may remain in detention "until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* "After this 6-month period," if a noncitizen provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* "[I]f the government fails to demonstrate a significant likelihood of removal in the reasonably foreseeable future, the noncitizen must be released." *Ahrach v. Baltazar*, No. 25-cv-03195-PAB, 2025 WL 3227529, at *2 (D. Colo. Nov. 19, 2025) (citing *Zadvydas*, 533 U.S. at 701).

**B. Petitioner's Detention Exceeds the Presumptively Reasonable Period, and He is Not Significantly Likely to be Released in the Reasonably Foreseeable Future**

In his Petition, Petitioner argues that since he has been cumulatively held in immigration-related detention following his final order of removal for over six months (taking together both his current detention, beginning in November 2025 and his detention from August to November 2003), his detention is presumptively unreasonable. *See* ECF No. 1 ¶ 33 ("In total, ICE has jailed [Petitioner] for approximately 212 days."); *id.* ¶¶ 34–41. Petitioner further contends that because the government cannot demonstrate that removal is significantly likely in the reasonably foreseeable future, this continued detention violates his due process rights and exceeds Respondents' detention authority under 8 U.S.C. § 1231(a). *Id.* ¶¶ 34, 37–41. For the reasons explained below, the Court agrees with Petitioner.

First, the Court declines Respondents' request that the Court ignore Petitioner's time in detention in 2003-2004 and find that the presumptively reasonable six-month period of Petitioner's detention "started on November 5, 2025." ECF No. 16 at 6. The Court acknowledges that, as Respondents note, district courts in the Tenth Circuit are split regarding whether the six-month *Zadvydas* removal period must be successive. *Id.* at 5–6 (collecting cases). However, the Court is more convinced by other courts, including those in the District of Colorado, that have found that "district courts more often conclude that a detainee's periods of detention should be considered together in determining whether the detention has exceeded the presumptively reasonable time under *Zadvydas*." *Aguilar v. Noem*, 25-cv-03463-NYW, 2025 WL 3514282, at *3 (D. Colo. Dec. 8, 2025) (collecting cases); *see also, e.g., Pena-Gil v. Lyons*, 25-cv-03268-PAB-NRN, 2025 WL 3268333, at *2 (D. Colo. Nov. 24, 2025) (concluding the same and collecting cases in

support of its determination that even though "petitioner's 20-month and five-month periods of detention [were] served nonconsecutively, petitioner has nonetheless been detained longer than the six-month presumptively reasonable period"). Courts have even reached the same conclusion where, as here, there is a significant gap between periods of detention. *See, e.g.*, *Pena-Gil*, 2025 WL 3268333, at *2 (considering petitioner's time in immigration detention from 1989 to 1990, as well as his recent time in ICE custody in 2025, in reaching the conclusion that the detention was presumptively unreasonable); *Nguyen v. Scott*, 796 F. Supp. 3d 703, 721 (W.D. Wash. 2025) (determining that petitioner's "detention is not presumptively reasonable" in light of his having spent "around nineteen months" in immigration detention cumulatively between 2000-2001 and 2003-2004, as well as an additional month in 2025). Because Petitioner has demonstrated that he has been cumulatively held in immigration detention for over six months (including at least three months in 2003, plus over four months since Petitioner was redetained in November 2025), the "presumptively reasonable period for [Petitioner's] detention has been exceeded." *Id.*; *see also, e.g.*, *Aguilar*, 2025 WL 3514282, at *3 (concluding that "Petitioner's detention, calculated cumulatively at approximately eight months, has exceeded the presumptively reasonable six-month detention period recognized in *Zadvydas*").

Second, the Court is satisfied that Petitioner has met (and Respondents have failed to rebut) his burden of demonstrating that there is no significant likelihood that Petitioner will be removed in the reasonably foreseeable future. The Court agrees with Petitioner's contention that "[t]here is no evidence that ICE will succeed in deporting [him] in the reasonably foreseeable future." ECF No. 1 ¶ 57. While the Court accepts

Respondents' request to "consider that ICE is taking steps to remove Petitioner by working to obtain a travel document from Vietnam for Petitioner, and that ICE has successfully removed Vietnamese citizens to Vietnam in recent months," ECF No. 16 at 6 (citing ECF No. 16-1 ¶¶ 16, 18), those facts do not move the needle. Such facts simply demonstrate that Petitioner's removal is *possible*. But the mere "'chance' of removal within an unspecified period of time is not the same as a significant likelihood of removal in the reasonably foreseeable future." *Siguenza v. Moniz*, No. 25-CV-11914-ADB, 2025 WL 2734704, at *3 (D. Mass. Sept. 25, 2025). Moreover, "[u]nsubstantiated assertions that the government will pursue removal are insufficient to satisfy [Respondents'] burden." *Pena-Gil*, 2025 WL 3268333, at *4 (citing *Siguenza*, 2025 WL 2734704, at *3).

The Court's conclusion is further bolstered by the fact that the government has been unable to secure Vietnamese travel documents to facilitate Petitioner's removal for over 20 years, and it "has not provided any reason as to why deportation to [Vietnam] is now possible." *Id.* at *3. Indeed, Respondents do not even "indicate whether [Vietnam] has acknowledged the [latest] request," *id.* at *4, for Petitioner's travel documents. In light of this, Respondents' representation that ICE has recently successfully removed other noncitizens to Vietnam does not convince the Court that the same will be true for Petitioner any time soon, particularly given the absence of any representation that the circumstances leading to those other noncitizens' removals are also present here. As Respondents offer no such explanation, their "failure to explain why deportation is now possible, when previous deportation efforts have failed supports the Court's finding that [R]espondents have failed to meet their burden supports the Court's finding that respondents have failed to meet their burden" and rebut Petitioner's showing that his

8

removal to Vietnam is not significantly likely to occur in the reasonably foreseeable future. *Id.* (citing *Nguyen*, 2025 WL 2419288, at *14, *18).

## III.    CONCLUSION

For the reasons set forth above, the Court GRANTS Petitioner's Verified Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, ECF No. 1. Respondents are ORDERED to release Petitioner from custody immediately, but no later than within 12 hours of this Order, and may not impose on Petitioner any additional conditions of release or supervision beyond those Petitioner was subject to in connection with his preexisting order of supervision and immediately prior to his recent detention.

Additionally, Respondents SHALL FILE a status report within TWO DAYS of this Order certifying compliance. Because the Court's ruling affords Petitioner the relief he seeks, the Court need not address Petitioner's remaining arguments at this time, and Petitioner-Plaintiff's Motion for Temporary Restraining Order and/or Preliminary Injunction, ECF No. 2, which seeks the same relief as the Petition, is DENIED AS MOOT.

DATED this day 18th of March 2026.

BY THE COURT:

_____

Charlotte N. Sweeney
United States District Judge

9